**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL A. PETERSEN-KEISLER, | Case No. 1:12-cv-01050-BAM |
| Plaintiff, | ORDER VACATING AGENCY'S DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

### I.   INTRODUCTION

Plaintiff Carol A. Petersen-Keisler ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income payments based on disability pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.

Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and based upon proper legal standards. Accordingly, the Court vacates the Commissioner's determination and remands for further proceedings consistent with this Order.

## II. BACKGROUND

**A.     Overview of Administrative Proceedings**

On June 24, 2008, Plaintiff applied for Supplemental Security Income payments based on disability pursuant to Title XVI of the Social Security Act.  AR 148-50.[1] Plaintiff's application alleged she is unable to work because of tendonitis, shingles, arthritis, lupus and depression. AR 148-50, 160.  Plaintiff's application was denied initially and on reconsideration.  AR 82-83. Subsequently, Plaintiff requested a hearing before an ALJ.  In a decision dated June 25, 2010, the ALJ found that Plaintiff was not disabled as defined by the Act because she could perform jobs that existed in significant numbers. AR 24-35.  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request to review the ALJ's decision.  AR 1-3. Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g), 1383(c)(3).

**B.     Summary of Relevant Evidence[2]**

On March 22, 2010, Plaintiff testified before an ALJ concerning her claim for social security benefits. Plaintiff was represented by counsel.  Also appearing and testifying was Luis O. Mas, a vocational expert (the "VE").

Plaintiff was born on November 16, 1949, and was sixty years old at the time of the hearing. Plaintiff worked as a massage therapist from 1978 to August 2002.  AR 161. Plaintiff testified she no longer works due to pain in her neck, arms, hands and left knee.  Plaintiff also testified constantly feels weak and depressed.  AR 45, 55-58.

At the March 22, 2010 administrative hearing, the VE described Plaintiff's past job as semi-skilled, medium work. AR 63.  The ALJ asked whether work as a massage therapist was possible for a person limited to medium work, with the ability to stand and/or walk for four hours out of an eight-hour workday, if she was unable to forcefully grip or grasp with the left hand, able to handle only

---

[1] References to the Administrative Record cite to "AR," followed by the corresponding page number to the Administrative Record.
[2] Plaintiff does not challenge the ALJ's findings regarding her impairments and their limiting effects.  Rather, Plaintiff's sole contention on appeal focuses on the ALJ's determination that Plaintiff's limitations would not preclude the performance of other jobs existing in significant numbers at step five of the sequential evaluation process.  *See,* Pl.'s Opening Brief, 8-17.  Accordingly, the Court's summary of the record is limited to information relevant to the ALJ's step five determination.

occasional contact with the public, had to work in an environment that involved working primarily with things, rather than people, with no exposure to hazards and no production quotas. AR 63-64. The VE responded that the hypothetical person would not be able to perform Plaintiff's past work. AR 64. The VE also clarified that Plaintiff would have no transferrable skills from her work as a massage therapist. AR 64.

The ALJ then asked whether the hypothetical person could perform other work. AR 64. The VE responded that the hypothetical person could perform the following light, unskilled occupations: (1) small parts assembler (Dictionary of Occupational Titles (DOT) No. 706.684-022); (2) cleaner/housekeeper (DOT No. 323.687-014); and (3) production assembly person (DOT No. 706.687-010). AR 64. The VE also testified that Plaintiff could perform medium work as (1) an electrician's helper in the automotive industry (DOT No. 825.684-010), and (2) hand packager (DOT No. 920.587-018). AR 65.

**C.     The ALJ's Decision**

On June 25, 2010, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  Specifically, the ALJ made the following relevant findings:

1. Plaintiff has not engaged in substantial gainful activity since June 24, 2008, the application date;

2. Plaintiff has the following severe impairments: obesity, bilateral ankle swelling, arthritis, left carpal tunnel syndrome and healed left tibia tear;

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. Plaintiff has the residual functional capacity ("RFC") to perform less than a full range of medium work as defined in 20 CFR 416.967(c).  Plaintiff is able to stand on her feet four hours out of an eight hour work day; unlimited sitting; no forceful gripping or grasping with the non-dominant left hand; no exposure to hazards such as dangerous machinery; occasional contact with the public; primarily working with things rather than people; and no production quotas such as piece work;

5.     Plaintiff is unable to perform any past relevant work;

6.     As of the date of Plaintiff's application, Plaintiff was defined as an individual of advanced age, however, Plaintiff has subsequently changed age category to closely approaching retirement age;

7.     Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR 416.969 and 416.969(a));

8.     Plaintiff has not been under a disability, as defined in the Act, from June 24, 2008 through the date of the ALJ's decision (20 CFR 416.920(g)).

### III.     DISCUSSION

Plaintiff's appeal presents a single challenge to the Commissioner's decision. Plaintiff argues the ALJ did not meet his burden at step five of the sequential evaluation process to demonstrate there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Specifically, Plaintiff argues the ALJ's decision that Plaintiff can perform the medium-exertion occupations of an electrician helper and hand packager, despite being limited to four hours of standing and walking in an eight-hour work day, is not supported by the Dictionary of Occupational Titles and is otherwise not supported by substantial evidence in the record.[3]

**A.     Standard of Review**

To be disabled, a claimant must have a severe medical impairment capable of lasting at least twelve months, such that in light of his medical and vocational limitations he cannot engage in either his past work or in any work existing in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3). The claimant will be found disabled if she either satisfies all the elements of this definition or has a medical condition which is defined as disabling under the Commissioner's

---

[3] Plaintiff argues the ALJ's finding that Plaintiff could perform certain light-exertion positions does not satisfy the Commissioner's burden. Pl.'s Opening Brief, 10: 12-15. Plaintiff argues that due to her advanced age, if Plaintiff is relegated to light unskilled work she is disabled pursuant to 20 CFR Pt. 404, Subpt. P, Medical Vocational Guideline ("Grid") Rule 202.06. Thus, Plaintiff argues, the only occupations relevant to the Commissioner's burden are the medium-exertion occupations of hand packager and electrician helper. The Commissioner does not dispute Plaintiff's argument that if Plaintiff were limited to light work, Grid Rule 202.06 would direct a conclusion that Plaintiff is disabled. *See,* Commissioner's Brief, 6: 19-23 ("where a claimant's exertional capacity falls between two rules that direct opposite conclusions, i.e., "not disabled" at the higher exertional level and "disabled" at the lower exertional level, it is appropriate for the ALJ to consult a vocational expert to determine the sufficiency of the remaining occupational base.") Accordingly, the Court will only address whether the ALJ's conclusion that Plaintiff could perform the medium exertional jobs of electrician helper and hand packager is supported by substantial evidence in the record.

4

"listings." *See* 20 C.F.R. 404.1520. The Commissioner prescribes the order in which the ALJ considers these factors, and instructs the ALJ to end his inquiry as soon as he reaches a dispositive finding, either in that the claimant fails to satisfy an element of disability or in that he satisfies a listing. This sequential process is intended to help ensure that determinations are uniform, administratively efficient, neutral, and carefully documented. 20 C.F.R. 404.1594(b)(5); *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999) (sequential process embodies "presumptions about disabilities, job availability, and their interrelation" which "grow out of the need to administer a large benefits system efficiently").

Congress has provided a limited scope of judicial review of the Commissioner's finding that a claimant is not disabled. This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla," *id.,* but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the Court may not substitute its judgment. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.1996).

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920*; Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir.1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Id.* If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Id.* If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner

5

to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Id.* If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. *Id.* The claimant has the burden of proving that she is unable to perform past relevant work. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir. 2012).

**B.      Step Five of the Sequential Evaluation Process**

      **1.      Legal Standard**

At step five of the sequential evaluation, the ALJ has the burden to identify jobs that exist in significant numbers in the national economy that the claimant can perform. *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ may rely on the testimony of a vocational expert, who can assess the claimant's limitations and identify any existing jobs within the claimant's RFC. Social Security Ruling 83-12.2 ; *Terry v. Sullivan,* 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *Johnson*, 60 F.3d at 1435; *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons for any conflict. *Massachi v. Astrue,* 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p). When a vocational expert provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between the vocational expert's evidence and information provided in the DOT. In these situations, the adjudicator will:

> • Ask the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and
>
> • If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p. In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Pinto v. Massanari,* 249 F.3d 840, 846 (9th Cir. 2001) (internal quotation marks and citation omitted).

Where the ALJ fails to obtain an explanation for and resolve an apparent conflict –even where the vocational expert did not identify the conflict – the ALJ errs. *See Hernandez v. Astrue*, No. CV 10-3142, 2011 WL 223595, at *2-5 (C.D. Cal. 2011) (where vocational expert incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on vocational expert's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162 at *3 (C.D. Cal. 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

### 2. The Vocational Expert's Testimony

Relying on the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform two medium-exertion occupations: hand packager and electrician helper. Plaintiff's counsel questioned the VE about this testimony, and the following exchange took place:

> Q. Okay. Does this person have an option to do this job seated or standing?
>
> A. Considered to be bench-type work, therefore you a sit/stand option. Requirements would be*, as per the DOT* sitting sometimes, standing sometimes on a level, from zero to four, it rates a two in both sitting and standing.

AR 66 (emphasis added).

Plaintiff's counsel then asked the VE about the occupation of hand packager, and the following exchange took place:

> Q. And again is it your testimony [the job of hand packager] can be done with only four hours of standing?

7

>   A.   Yes.
>
>   Q.   Are they working at a bench as well? What are the requirements of that one as opposed to the electrician helper? You said something zero – to four.
>
>   A.   (INAUDIBLE) I'm sorry, what was your actual question in regards to the –
>
>   Q.   You said it could be done with four out of eight hours standing and walking. My question was you cited under prior occupation for the electrician helper, zero out of four, you said it was a two to be done at a bench.
>
>   A.   Sitting a two, standing a two. Walking a two, so they're all twos – ***per the DOT***, all twos.

AR 66-67 (emphasis added).

Plaintiff's counsel then questioned the VE about the gripping and manipulation requirements of these two medium exertion positions:

>   Q.   Now, do you consider the ability to lift objects weighing up to 50 pounds [to] require forceful gripping and handling?
>
>   A.   It does speak to the fact that the issue of handling is frequent and significant in this job.
>
>   Q.   Would you consider something gripping or grasping, the amount of pressure you'd have to exert to lift something weighing up to 50 pounds, would that be I guess forceful?
>
>   A.   Yeah, we would have – yeah. I'll have to fall back on the DOT (INAUDIBLE)
>
>   Q.   Unfortunately I don't think the DOT talks about --
>
>   A.   Yeah, that's what I'm trying to –
>
>   Q.   -- Strength.
>
>   ALJ: It's also only with the non-dominant left hand, so that would –
>
>   Q.   (By Attorney) True. But I guess my point is if you're going to lift something 50 pounds, even a healthy individual is going to need two hands to lift something 50 pounds, and exert enough pressure on that to be able to lift that object.
>
>   A.   No, I don't think so. The use of handler objects is still a two at this level. Being that it is non-dominant I think it would not be -- I don't believe it would be problematic.

AR 67-68. Based on this testimony, the ALJ concluded Plaintiff could perform the work of a hand

packager and electrician's helper.

### 3.     Applicable DOT Regulations

Plaintiff argues the DOT regulations do not support the VE's testimony or the ALJ's conclusion.  Specifically, Plaintiff argues the Regulations' definitions of light work and medium work, as well as the descriptions for the occupations of hand packager and electrician helper, demonstrates the ALJ's conclusion that Plaintiff could perform these medium-exertion jobs was in error.

The DOT defines light work as follows:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for sedentary work. Even though the weight lifted may be only a negligible amount a job is rated Light : (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Dictionary of Occupational Titles, Appendix C, Section L, 1991 WL 688702.

Medium work is defined in the DOT as follows:

> Exerting 20 to 50 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or greater than negligible up to 10 pounds of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Light Work.

Dictionary of Occupational Titles, Appendix C, Section M, 1991 WL 688702.

The DOT provides the following description for the occupation of Electrician's Assistant:

> to repair automotive vehicle electrical equipment: Disassembles electrical units, such as starters and generators, using hand tools. Removes and replaces defective parts, such as armatures, brushes, and wires. Washes parts. May lift motors and generators, using mechanical hoist, and move parts about repair shop, using handtruck.

Electrician Helper (DOT #825.684-010), 1991 WL 681766.  Notably, this position requires "significant" manipulating, and "frequent" handling and fingering ("frequent" is defined as a

9

requirement that exists from 1/3 to 2/3 of the time). *Id.* Additionally, this position is described as requiring the performance of "repetitive or short-cycle work." *Id.*

The DOT provides the following description for the occupation of Hand Packager:

> Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. Records information, such as weight, time, and date packaged.

Hand Packager (DOT #920.587-018), 1991 WL 687916. Notably, this job requires "significant" and "constant" handling and fingering ("constant" is defined as a requirement that exists for 2/3 or more of the time). *Id.* Additionally, this position is described as requiring the performance of "repetitive or short-cycle work." *Id.*

### 4. The ALJ Erred At Step Five

Based on the foregoing, Plaintiff argues the ALJ's decision was erroneous in two respects. Plaintiff argues the Regulations do not contain a "one-to-four scale" describing the amount of standing or walking involved in a certain occupation. The VE's statement that these medium-exertion jobs were rated as a "2" on this sliding scale was, thus, fabricated, and the ALJ's reliance on this representation was in error.

The Commissioner responds that the DOT does not state that a medium job necessarily entails walking/standing more than four hours in an eight-hour workday. The Commissioner notes that the DOT may categorize a job as light work (or, by extension, medium work) merely because it requires use of arm or leg controls, or alternatively, because it requires constant pushing or pulling at a production rate pace.

As Plaintiff correctly notes, the VE's testimony that, "per the DOT," the occupations of electrician's assistant and hand packager entailed standing and walking "sometimes," while rating a two on a scale of zero to four, is false. There are no such classifications with regards to sitting, standing and walking in the DOT. Simply put, the VE's testimony has no foundation in the DOT.

Indeed, even the Commissioner acknowledges that "is not clear from what source the vocational expert derived her rating methodology." Comm. Brief, 5, fn. 4.

The Commissioner argues the ALJ's reliance on the VE's unsubstantiated testimony is harmless error for two reasons. First, the Commissioner argues the ALJ properly found Plaintiff could work these medium-exertion occupations despite her standing/walking limitations because the VE stated that these positions are generally "considered to be bench-type work, therefore you have a sit/stand option." AR 66. The Commissioner, however, has offered no facts or authority, and the Court has found none, for the proposition that a stand/sit option means that Plaintiff could perform these occupations with a four hour standing/walking limitation. On the contrary, the VE justified his conclusion that Plaintiff could perform these positions despite her limitations because "[the standing/walking] [r]equirements would be, *as per the DOT[,]* sitting sometimes, standing sometimes on a level, from zero to four, it rates a two in both sitting and standing." AR 66 (emphasis added). The DOT does not contain such a rating methodology, and the VE never offered any other explanation to support his testimony that Plaintiff could work these medium-exertion positions.

The Commissioner also argues harmless error because, per the definitions of light and medium work in the DOT, it is possible for an individual limited to four hours of standing to perform the medium exertion positions identified by the VE. Even assuming the Commissioner was correct, this argument ignores the Commissioner's burden. At Step Five, it is the Commissioner's burden to demonstrate there are *in fact* significant jobs in the national economy Plaintiff could perform despite her limitations. *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir. 2012). Here, the Commissioner has not offered any factual findings, testimony or other evidence to support a conclusion that this possibility specifically applies to Plaintiff. The notion that the ALJ's conclusion could theoretically be possible under certain circumstances does not substantiate the Commissioner's burden.

The Court also notes several other errors in the ALJ's reliance on the VE's testimony. First, the ALJ made no strength findings for Plaintiff's residual functional capacity, i.e., how much weight Plaintiff could lift occasionally and frequently. As a result, this factor was never included in the hypotheticals to the VE. As a practical matter, because the ALJ found Plaintiff could perform "less

than the full range of medium work," and the difference articulated by the Regulations between light and medium work are the strength considerations, it was incumbent on the ALJ to specifically determine Plaintiff's strength capabilities. The ALJ failed to do so.

The ALJ's reliance on the VE's testimony concerning Plaintiff's gripping and grasping limitations was also in error. The ALJ found that Plaintiff could not forcefully grip or grasp with her left hand. However, the occupations of electrician's assistant and package handler both require significant manipulation, entailing frequent to constant handling and fingering. The ALJ's finding that Plaintiff could work in an occupation requiring frequent to constant handling and fingering conflicts with his finding that Plaintiff could not forcefully grip or grasp with her left hand. Neither the ALJ nor the VE provided an explanation for this apparent conflict.

Moreover, a medium-exertion occupation requires the individual to have the ability to lift up to fifty pounds for up to one-third of the day. The ALJ's finding that Plaintiff could engage in medium-exertion work (thereby lifting fifty pounds for up to one-third of the day) also conflicts with the ALJ's finding that Plaintiff could not forcefully grip or grasp with her left hand. Neither the ALJ nor the VE provided an explanation for this apparent conflict.

The Court notes that the VE described the griping and grasping requirements of these positions as follows: "[t]he use of handler objects is still a two [on a scale of one-to-four] at this level." AR 68. However, similar to the VE's testimony concerning the standing and walking scale, this scale is nowhere to be found in the Regulations. Moreover, the VE's testimony on this topic was inconsistent. *Compare,* AR 67 (Q: Now, do you consider the ability to lift objects weighing up to 50 pounds [to] require forceful gripping and handling? A: It does speak to the fact that the issue of handling is frequent and significant in this job; Q: Would you consider something gripping or grasping, the amount of pressure you'd have to exert to lift something weighing up to 50 pounds, would that be I guess forceful? A: Yeah, we would have – yeah. I'll have to fall back on the DOT (INAUDIBLE)), *with* AR 68 ("Q: But I guess my point is if you're going to lift something 50 pounds, even a healthy individual is going to need two hands to lift something 50 pounds, and exert enough pressure on that to be able to lift that object. A: No, I don't think so. The use of handler objects is still a two at this level. Being that it is non-dominant I think it would not be --  I don't

believe it would be problematic.")

The medium positions identified by the VE appear to conflict with two additional limitations found by the ALJ. First, the position of Electrician's Assistant may require an individual to "lift motors and generators, using mechanical hoist, and move parts about repair shop, using handtruck." Electrician Helper (DOT #825.684-010), 1991 WL 681766. This requirement appears to conflict with the ALJ's finding that Plaintiff cannot be exposed to hazards such as dangerous machinery. AR 30.

Second, the position of Hand Packager generally is described as requiring the performance of "repetitive or short-cycle work." Hand Packager (DOT #920.587-018), 1991 WL 687916. The specific description of the Hand Packager position also appears to entail production quotas. Thus, at first glance, this position is not compatible with the ALJ's finding that Plaintiff should not be subjected to production quotas. AR 30. Neither the ALJ nor the VE provided an explanation to overcome these conflicts.

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000); *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir.1984). In this case, remand is appropriate for the ALJ to: (1) make factual findings regarding strength considerations in Plaintiff's residual functional capacity; and (2) obtain testimony from a different Vocational Expert to determine whether there are medium-exertion jobs existing in significant numbers in the national economy that Plaintiff could perform, despite the limitations expressed in Plaintiff's residual functional capacity finding.

/./././

/./././

1  Accordingly, IT IS HEREBY ORDERED that: (1) plaintiff's request for remand is granted; (2) the decision of the Commissioner is reversed; and (3) this action is remanded to defendant for further proceedings consistent with this Order.

IT IS SO ORDERED.

Dated:   **September 25, 2013**         /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE